UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARRIE WALTON,                    )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )    Case No. 4:02CV00163 AGF
                                  )
UNITED STATES DEPARTMENT          )
OF AGRICULTURE, et al.,           )
                                  )
        Defendants.               )

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the following three motions: (1) the Motion to Dismiss, or for Summary Judgment, filed by Defendant the United States Department of Agriculture ("USDA") (Doc. #117); (2) the Motion to Dismiss filed by Defendant the Merit System Protection Board ("MSPB") (Doc. #122), in which the Office of Personnel Management joined[2]; and (3) the Motion for Summary Judgment filed by USDA, MSPB, and OPM (Doc. #144). Upon consideration of the entire record, including the oral arguments presented by counsel on March 6, 2007, the Court grants in part and denies in part the USDA's motion to dismiss; grants MSPB's and OPM's motion to dismiss in its entirety; and grants in part and denies in part Defendants' motion for summary judgment.

---

[1]    The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

[2]    OPM joined in MSPB's motion to dismiss in the memorandum in support of MSPB's motion. (Doc. #123, at p.11 n.3).

1

Plaintiff, who is now 51 years old, is an African-American female who was employed by the USDA Rural Development (formerly Farmer's Home Administration ("FmHA")) from 1982 to 1999, when she was terminated for the purported reasons of excessive absenteeism and mental instability (murderous ideation toward her supervisor). Plaintiff claims in her ten-count second amended complaint that her termination and alleged discriminatory and retaliatory treatment during her employment at USDA were based upon her race, gender, disabilities of depression and multiple sclerosis, protected whistleblowing, and other activities. She also claims that Defendants interfered with her employment opportunities following her termination.

**BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

Many employment issues arose during Plaintiff's 17-year tenure with the USDA, and the facts related to her current lawsuit go back more than a decade and entail at least three different administrative proceedings Plaintiff pursued.

On May 12, 1993, Plaintiff, FmHA, and Local 3354 of the American Federation of Government Employees entered into a settlement agreement of all disputes, EEO complaints, and grievances between the Plaintiff and FmHA related to her past performance as a Training Specialist. FmHA agreed to assign Plaintiff to the position of Management Analyst and to provide her with training and assistance in this new job. In January 1994, Plaintiff filed an allegation of FmHA's noncompliance with the settlement agreement. The matter was not resolved until September 10, 1999, as related below.

In 1996, Plaintiff filed a Notice of Occupational Disease alleging that she

developed depression from the treatment she received after becoming a union steward (and successfully defending a co-worker who had been accused of fraud and poor performance). The claim was denied, and Plaintiff requested a hearing before the United States Department of Labor's Office of Workers' Compensation Programs ("OWCP"). Following a hearing, Jan Woods, Representative for OWCP, issued a decision on November 13, 1997, finding that Plaintiff failed to provide substantial evidence that she sustained an emotional injury in the performance of her duty.

Meanwhile, on October 30, 1997, Plaintiff contacted an EEO counselor with allegations of harassment and reprisal, and again raised allegations of noncompliance with the settlement agreement. On September 10, 1999, the USDA EEO issued a final decision on Plaintiff's previous and current claims of noncompliance, holding that the USDA EEO lacked jurisdiction over the matter and that any dispute over compliance with the terms of the settlement agreement had to be resolved between management and labor. Plaintiff appealed the decision to the EEOC, and on October 30, 2001, she received an EEOC Denial of Request for Reconsideration that was dated October 25, 2001. The denial notice informed Plaintiff that she had a right to file a civil action within 90 days from receipt.

While she was employed with USDA, Plaintiff also filed a series of complaints with the Office of Special Counsel and appealed the denial of these complaints to MSPB. In one complaint, referred to in the record as "Walton I," she asserted that she had been placed on a Performance Improvement Plan ("PIP") in July 1996 due to allegedly

3

protected whistleblowing disclosures she had made.  Following a hearing, MSPB found

on August 27, 1998, that one of the disclosures in question constituted protected activity

(while the others were not), but that the protected disclosure was not a contributing factor

to the issuance of the PIP.  Doc. #119-2.  Plaintiff filed a petition for review under  5

U.S.C. § 7703, with the Federal Circuit Court of Appeals, which affirmed MSPB's

decision.  <u>Walton v. USDA</u>, 230 F.3d 1383 (table), 2000 WL 194113 (Fed. Cir. Feb. 16,

2000) (per curiam) ("Walton I").

In the meantime, on March 19, 1999, USDA sent Plaintiff a Notice of Proposed

Removal for Inability to Perform, and on July 22, 1999, sent her a Decision Regarding

Proposed Removal which made her removal effective as of July 31, 1999.  Plaintiff

initiated administrative challenges to her removal.

Plaintiff filed the present action, <u>pro se</u>, on January 30, 2002, against "Mike

Johanns, Head of the USDA,"[3] and Steven Hollis, President of Local 3354.  She claimed

that USDA failed to comply with the terms of the 1993 settlement agreement and

subjected her to a hostile work environment, and that Local 3354 failed to represent her

on these matters.  She also alleged discrimination based upon race and sex, retaliation,

"collusionary activity," and ethical violations.

On June 3, 2002, Plaintiff filed a second complaint in this district, assigned Case

No. 4:02CV808 AGF, against the same parties.  Following a conference with the parties,

---

[3]  The Court takes judicial notice that Mike Johanns is the Secretary of the United
States Department of Agriculture and will refer to him as such <u>supra</u>.

the Court, on July 30, 2002, consolidated both lawsuits under the current case number and ordered Plaintiff to file an amended complaint setting forth each claim in one complaint. In compliance, Plaintiff filed a two-count amended complaint, on August 30, 2002, which set forth Plaintiff's Title VII claim based on the "Settlement Agreement EEOC decision" in Count I and Plaintiff's Title VII claim based on the "Remand EEOC decision" in Count II. (Doc. #34).

While the action was pending, an evidentiary hearing was held before MSPB on June 5, 2002, regarding Plaintiff's challenge to the removal decision. In an extensive "Initial Decision" dated August 2, 2002, Administrative Law Judge Gregory Miksa affirmed USDA's removal decision. Judge Miksa found:

> the agency has articulated a legitimate, non-discriminatory reason to effect [Plaintiff's] removal, i.e., her inability to safely return to work without a prognosis for recovery by an ascertainable date. The appellant produced no probative evidence showing that the real reason for this action was unlawful discrimination. I, accordingly, find the appellant's affirmative defenses of age, sex, and race discrimination without merit.

Defs.' Ex. 26 at 23. The decision told Plaintiff how and when to file for further review with the MSPB, the EEOC, or the federal courts.[4]

---

[4] The decision stated that Judge Miksa's initial decision would become final on September 6, 2002, unless a petition for review were filed with MSPB by that date; that Plaintiff could file a petition for review with MSPB within 30 days of receipt of Judge Miksa's decision; and that "[i]f you disagree with [MSPB]'s final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final." The decision further stated as follows: "If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination

At the same time that Plaintiff filed her two-count amended complaint, she sought leave to amend her complaint in the present action to add a count (Count III) challenging Judge Miksa's decision. Plaintiff's initial motions were denied for failure to attach a copy of the proposed amended complaint. Plaintiff properly filed a third motion to amend her complaint to add Count III on October 4, 2002. By Order dated October 9, 2002, the Court granted this motion conditional upon proof that Plaintiff had properly served the motion and proposed amendment. On October 17, 2002, a proper certificate of service was filed.

After permitting Plaintiff time to locate counsel, an attorney entered his appearance on behalf of Plaintiff on October 25, 2002, and the Court afforded counsel additional time to respond to the motions to dismiss that had been filed by Defendants.

By Memorandum and Order dated July 25, 2003, the Court granted several pending motions:

> (1) Local 3354 and Hollis's motion to dismiss Plaintiff's claims, to the extent that they were brought under Title VII or the ADEA (rather than for de novo review of MSPB's decision), based on Plaintiff's failure to exhaust her administrative remedies under these statutes, as there was no evidence in the record that Plaintiff had ever filed a charge with the EEOC against Local 3354 or Hollis;
>
> (2) USDA's motion for summary judgment (and Local 3354 and Hollis's motion to dismiss) on any claims under Title VII or the ADEA,

---

issues by filing a civil action" in the appropriate federal district court on discrimination issues and with the Federal Circuit Court of Appeals on nondiscrimination issues "no later than 30 calendar days after the date this initial decision becomes final." USDA's Ex. 26 at 24-26.

based on Plaintiff's failure to file her federal complaint within 90 days
of the date of receipt (October 30, 2001) of the EEOC's Denial of
Request for Reconsideration [the complaint was two days late];

(3) Local 3354 and Hollis's motion to dismiss for lack of jurisdiction
over Plaintiff's claims regarding breach of duty to represent;

(4) Local 3354 and Hollis's motion to dismiss any claims against
Hollis, as an individual; and

(5) USDA's motion to dismiss without prejudice the entire complaint,
pursuant to Federal Rule of Civil Procedure 8, which requires that a
complaint be simple, concise, and direct.

Plaintiff was given 45 days within which to file a new complaint which would
comport with Rule 8, and clearly identify the Defendant(s) against whom each claim was
asserted. At this time, both Plaintiff and the Court were having problems reaching
Plaintiff's counsel, and the Court granted Plaintiff's pro se motion to remove the attorney
she had retained. After further proceedings, during which time the Court issued orders
that Plaintiff show cause why the case should not be dismissed for failure to prosecute,
the Court appointed counsel to represent Plaintiff on November 22, 2004.

After counsel was appointed, the Court granted numerous extensions of time for
Plaintiff to comply with the 2003 Order, and an amended complaint was filed by
Plaintiff's counsel on May 2, 2005. The amended complaint again named Local 3354
and Hollis as defendants, and also named as defendants USDA, Mike Johanns - the
Secretary of the USDA, OPM, and MSPB. In her nine-count first amended complaint,
Plaintiff asserted general counts against all Defendants for employment discrimination on
the basis of race and gender in violation of Title VII and the Missouri Human Rights Act

(MHRA); retaliation under Title VII; violation of Plaintiff's rights under 42 U.S.C. §

1981 and § 1983; violation of the Americans with Disabilities Act (ADA); violation of

the National Labor Relations Act (NLRA); violation of the whistleblower provisions of

the CSRA and the Whistleblower Protection Act (WBPA); violation of Plaintiff's First,

Fifth, and Fourteenth Amendment rights; and tortious interference with Plaintiff's ability

to find employment.

By Memorandum and Order dated December 13, 2005, the Court granted Local

3354 and Hollis's motion to dismiss, finding:

- that the Court's July 25, 2003 Order precludes reassertion of
Plaintiff's claims against Hollis under Title VII, the ADA and the
MHRA in his individual capacity;

- that Plaintiff had not produced sufficient evidence to undermine the
Court's July 25, 2003 decision on the issue of administrative exhaustion
since Plaintiff never disputed that she had not received a notice of right
to sue from the EEOC as to Local 3354 or Hollis;

- that Plaintiff failed to state a claim under 42 U.S.C. § 1983 since it
applies only to parties acting under color of state law and is inapplicable
to private parties such as Local 3354 and Hollis, absent some
intertwining with state actors;

- that Plaintiff failed to state a claim under the First, Fifth, and
Fourteenth Amendments which apply only to governmental parties;

- that Plaintiff failed to state a claim under the NLRA which applies
only to federal postal employees;

- that Plaintiff failed to state a claim under the whistleblowing
provisions of the CSRA and the WBPA, which apply only to the
employee's employer or management personnel who have authority to
take "personnel actions," not the employee's union or its president; and

- that the Federal Labor Relations Authority ("FLRA") has the exclusive and final authority over a federal employee union's breach of its duty of fair representation, which includes the duty not to discriminate under state and federal law.

### A. Plaintiff's Current Second Amended Complaint

Following a case management conference and entry of a Case Management Order, Plaintiff filed a ten-count amended complaint (captioned "Second Amended Complaint"), with leave of Court, on April 3, 2006. In addition to claims against USDA, Johanns, OPM and MSPB, Plaintiff also included one claim against the dismissed Defendants, Hollis and Local 3354.

After reviewing the file sua sponte, the Court issued an order of clarification on June 19, 2006, explaining that Plaintiff's second amended complaint "shall not be construed as reviving any claims against Local 3354 or Steve Hollis" and ordered that they be stricken from the caption of the second amended complaint. As such, the Court reviews Plaintiff's current complaint only as to Defendants USDA, Johanns, OPM and MSPB, since Defendants Hollis and Local 3354 have previously been dismissed regarding these same claims.

### 1. General Allegations

Plaintiff alleges in her current complaint that in 1991, she assumed a leadership role in Local 3354. In 1992, she began representing an employee named Stanley Brasch. The issues concerning Brasch were settled in January 1993. Plaintiff contends, however, that her successful representation of Brasch resulted in her being threatened with and

suffering reprimands concerning her work, with daily harassment and disparate treatment. As a result of this treatment, Plaintiff suffered severe depression, lost wages, and needed outpatient psychiatric care.

Plaintiff further alleges that during the course of her employment with USDA, she filed complaints regarding Defendants' unethical activities, discrimination, and violation of her civil rights. One of these claims was settled in 1993. After that settlement, Plaintiff was subjected to disciplinary actions, investigations, and daily harassments from USDA employees. She then filed a complaint against Defendants for failure to comply with the 1993 settlement agreement.

After Plaintiff gave information to the EEOC concerning the disparate treatment she suffered, she alleges she was subjected to disciplinary action, investigation, and harassment by Defendants. While employed at the USDA, she suffered severe depression and was diagnosed with Multiple Sclerosis ("MS"), also due to this disparate treatment. Plaintiff requested reasonable accommodation for her disabilities related to, but not limited to, depression and MS, but Defendants failed to provide a reasonable accommodation.

Plaintiff alleges that she has tried to find other employment since 1999, but has been unable to do so because of the depression and mental anguish she has suffered due to Defendants' actions and omissions. Plaintiff also alleges that Defendants have interfered with Plaintiff's ability to find other employment. Plaintiff filed Complaints with MSPB and OPM, asserting both discrimination (race, sex, retaliation) and

nondiscrimination claims, as well as claims for violations of her Due Process rights.

## 2. **Specific Counts**

Plaintiff's second amended complaint asserts ten counts against the remaining

four Defendants and seeks relief under various federal and state provisions, as follows:

**Count I**: Discrimination based on race and gender in violation of Title VII and the Missouri Human Rights Act (MHRA) with regard to compensation, terms, conditions, and privileges of employment, as well as wrongful discharge.

**Count II**: Discrimination and retaliation in violation of Title VII by reprimanding and discharging Plaintiff for participating in protected activities, namely, participation in a labor union and the filing of grievances against USDA.

**Count III**: Discrimination based on race in violation of 42 U.SC. § 1981.

**Count IV**: Disparate treatment and discrimination in violation of 42 U.S.C. § 1982 and § 1983.

**Count V**: Discrimination based on Plaintiff's disability in violation of the Americans with Disabilities Act ("ADA").

**Count VI**:  Violation of the National Labor Relations Act ("NLRA") by interfering with, restraining, and coercing Plaintiff with threats of discharge or suspension, transfer, demotion, denial of preferred job assignment or promotions, and denial of overtime and/or sick leave based on discriminatory reasons.

**Count VII**:  Violation of Civil Service Reform Act of 1978 and the Whistleblower Protection Act of 1989 ("WBPA") by disciplining, transferring, reassigning, and/or firing Plaintiff as a result of her protected whistle-blowing activities.

**Count VIII**:  Violation of  Plaintiff's First Amendment Rights by abridging her freedom of speech regarding employment matters, and reprimanding, demoting, and firing her for the exercise of her First

11

Amendment rights.  Violation of Plaintiff's Fifth and Fourteenth Amendment rights by wrongfully depriving her of a property interest in her job without due process or equal protection under the law.

**Count IX**:  Tortious Interference with Plaintiff's employment at the USDA, as well as Plaintiff's ability to find employment after she was fired.

**Count X**: Plaintiff realleges all of the allegations set forth in Counts I-IX and asserts her right to a trial de novo regarding the claims and issues addressed in Judge Miksa's August 2, 2002 MSPB Decision.[5]

## DISCUSSION OF PENDING MOTIONS

### A.  Defendant USDA's Motion to Dismiss

As stated above, USDA has filed a motion to dismiss in this case.  (Doc. #117). When ruling on a motion to dismiss the Court takes all facts alleged in the complaint as true.  Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  The Court also must construe the allegations in the complaint and all reasonable inferences arising from those facts in favor of the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Id.

In its motion, USDA makes three basic arguments: (1) that some of Plaintiff's claims were prematurely filed and the remaining claims are time-barred; (2) that Title VII preempts all of Plaintiff's non-Title VII claims, and (3) that res judicata bars all of

---

[5]  Plaintiff's second amended complaint actually seeks a trial de novo regarding all claims and issues ever raised in any proceeding before MSPB and OPM.  However, at oral argument, Plaintiff conceded Count X relates only to Judge Miksa's August 2, 2002 MSPB Decision.

Plaintiff's claims.

For purposes of addressing the current motions, it is helpful to recognize that Plaintiff's current complaint essentially falls into three different sections.

(i) Plaintiff's EEOC complaint of breach of the 1993 settlement agreement

The first set of issues relevant to Plaintiff's various claims case relates back to grievances Plaintiff made within the USDA which resulted in the settlement reached by Plaintiff and the USDA in 1993 under the parties' Collective Bargaining Agreement. As set forth above, Plaintiff believed that the USDA was in breach of this settlement agreement and sought to rectify this alleged breach by filing a discrimination complaint with the EEOC. Plaintiff's complaint was dismissed, however, after the EEOC found that a complainant may not use the EEO process to obtain compliance with a grievance settlement. After Plaintiff's request for reconsideration of that EEOC decision was denied, Plaintiff filed the initial pro se complaint in this Court under Title VII.

(ii) Plaintiff's various other EEOC complaints resulting in EEOC Remand

After Plaintiff filed numerous other EEOC complaints about her continued employment with the USDA, the EEOC issued an Order remanding all of Plaintiff's discrimination complaints to the USDA so that the USDA could complete its investigation of, and final report on, all of Plaintiff's claims. For purposes of this Order, it is unnecessary to detail the merits of these various other EEOC complaints. What is important is that after the EEOC issued its Order remanding these EEOC complaints to the USDA, Plaintiff filed her second pro se complaint, on June 3, 2002, against the same

13

four Defendants under Title VII. That case was assigned case number 4:02CV808 AGF, and was thereafter consolidated with the present case.

(iii) <u>Review of Judge Miksa's August 2, 2002 MSPB Decision regarding Plaintiff's termination</u>

Plaintiff also seeks review of the August 2, 2002 Decision by Judge Gregory A. Miksa based on complaints of discrimination Plaintiff filed with the MSPB after her employment was terminated on July 30, 1999. Plaintiff first attempted to assert these claims on August 30, 2002, when she requested leave to amend her then-current complaint to include a Count III seeking review.

**1. <u>Exhaustion and Timeliness</u>**

Under federal law, a plaintiff must file his or her discrimination suit within 90 days after receiving a right to sue notice from the EEOC. <u>See</u> 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1). As described above, two of the three parts of this lawsuit stem from decisions from the EEOC. As such, a review of the dates surrounding each of these decisions is necessary.

The first complaint Plaintiff filed in this Court stemmed from the "Settlement Agreement EEOC Decision." After Plaintiff's request for reconsideration of that EEOC Decision was denied by the EEOC in its October 25, 2001 Order, it went on to specifically instruct Plaintiff that she had 90 days under federal law in which to file her discrimination suit in an appropriate United States District Court. It is presumed that Plaintiff received this Order within five days of mailing absent convincing denial of

receipt, see Barnes v. Riverside Seat Co., 46 Fed. Appx. 384, 385 (8th Cir. 2002), and Plaintiff has admitted that she in fact received the EEOC Decision five days later, on October 30, 2001. Ninety days from October 30, 2001 would have been Monday, January 28, 2002. Inasmuch as Plaintiff filed her lawsuit based on the "Settlement Agreement EEOC Decision" on Wednesday, January 30, 2002, she missed the filing deadline by two days, as this Court has previously ruled. As such, as the Court already ruled in its July 25, 2003 Order, to the extent Plaintiff seeks to raise any claims she raised in her original lawsuit regarding USDA's alleged breach of the 1993 settlement agreement, such claims are time-barred.

Attached to Plaintiff's second lawsuit (originally docketed under Case # 02CV808) is the "Remand EEOC Decision" dated November 5, 1999 remanding Plaintiff's claims to the agency. A decision by the EEOC to remand the case to the agency is not a "final decision" by the EEOC. Espinueva v. Garrett, 895 F.2d 1164, 1167 (7th Cir. 1990). If Plaintiff did not obtain a "final decision" by the EEOC with regard to her claims, she has not yet exhausted her administrative remedies with regard to these claims. Id. As such, Plaintiff does not have the right to bring suit on these claims in this court. Id. Accordingly, Plaintiff's suit is premature and must be dismissed. Id.[6]

_____

[6] There is no easy way to summarize the claims Plaintiff makes in her second lawsuit. First, there is no final decision from the EEOC that summarizes what claims the EEOC referred to in its remand order. Second, in her second lawsuit, Plaintiff seems to make the same claims she made in the first lawsuit, regarding USDA's alleged breach of the settlement agreement, as well as raising all of the issues she raised before the MSPB that were addressed by Judge Miksa. As such, it is easier to determine what claims

In the third aspect of her lawsuit, Plaintiff seeks a trial de novo regarding the claims and issues raised in Judge Miksa's August 2, 2002 MSPB Decision. The deadlines for review of Judge Miksa's August 2, 2002 Decision are detailed at the end of Judge's Miksa's decision. From pages 24 to 26, Plaintiff was informed that this decision became final on September 6, 2002. She also was informed that if she did not file a petition for review with the MSPB Board, she had "no later than 30 calendar days after the date this initial decision becomes final" in which to file a civil appeal in the appropriate United States district court. See 42 U.S.C. § 2000e-16(c). Therefore, Plaintiff had until October 6, 2002 in which to file her civil appeal for review in this Court.

Defendants USDA and Johanns urge the Court to use the initial filing date of this lawsuit – or January 30, 2002 – in determining whether Plaintiff's appeal of Judge Miksa's August 2, 2002 Decision was timely. Using this date, Defendants argue Plaintiff's appeal of this MSPB Decision was filed prematurely since it was not a final and appealable agency decision when Plaintiff filed suit. The Court declines to do so.

Rather, the Court looks to the date when Plaintiff properly filed her motion for leave to file Count III of her Amended Complaint. As set forth above, after previous motions to amend were denied on procedural grounds, Plaintiff filed a third motion to amend her complaint to add Count III on October 4, 2002. This motion was granted on

---

remain in Plaintiff's case, as the Court does supra, than to detail here what claims are filed prematurely by Plaintiff in this second lawsuit.

October 9, 2002 and Plaintiff's Count III was deemed filed by the Court after Plaintiff filed a "proper" certificate of service (which she accomplished on October 17, 2002). Therefore, since the successful motion for leave to file Count III was filed before October 6, 2002, the Court deems Plaintiff's request for review of the MSPB decision to be timely filed. Accordingly, the only claims that are properly before the Court pertain to the issues addressed in Judge Miksa's August 2, 2002 decision.

### 2. The Court's Dual Function with Regard to the Issues Raised in the MSPB Appeal

It is important to note, however, that this Court's review of Judge Miksa's decision gives the Court dual functions. First, the Court must act as a reviewing court with regard to Judge Miksa's decision on any claims that do not raise discrimination and must apply an "arbitrary and capricious" standard based solely on this Court's review of the MSPB record. 5 U.S.C. § 7703(c). Second, the Court must employ its usual function as a trial court with regard to any claims of discrimination since Plaintiff has "the right to have the facts subject to trial de novo" by this reviewing district court. Id. A brief review of the procedural labyrinth which dictates this Court's functions is necessary.

The MSPB is an independent, quasi-judicial, federal administrative agency established under the Civil Service Reform Act of 1978 that provides a forum in which federal employees can appeal significant adverse employment actions taken against

them.[7]  See 5 U.S.C. §§ 1204, 7701.  In other words, if a federal agency takes an adverse

action against one of its employees, such as firing the employee, the employee may

appeal that decision to the MSPB.  Id.  If this employee appeals the adverse employment

decision to the MSPB and also alleges that a basis for the employment action was

discrimination,[8] it is called a "mixed case" appeal to the MSPB.  In such cases, the

employee "alleges that an appealable agency action was effected, in whole or in part,

because of discrimination on the basis of race, color, religion, sex, national origin,

handicap, or age."  29 C.F.R. § 1614.302(a)(2); 5 U.S.C. § 7702.  When an employee

files a mixed case appeal to the MSPB, "the MSPB is authorized, and in fact required, to

'decide both the issue of discrimination and the appealable action.'"  McAdams v. Reno,

858 F. Supp. 945, 948 (D. Minn. 1994)(quoting 5 U.S.C. § 7702(a)(1)), aff'd, 64 F.3d

1137 (8th Cir. 1995).  After the MSPB issues a final decision on the employee's MSPB

appeal of the adverse employment action taken by the employing federal agency, the

employee may obtain judicial review of the MSPB order or may seek administrative

review with the EEOC.  McAdams, 858 F. Supp. at 948-49 (quoting 5 U.S.C. §

7702(a)(3)).

---

[7]  The MSPB has jurisdiction only over specified "adverse employment actions," such as termination as Plaintiff claims here.  5 U.S.C. § 7512.

[8]  Claims of discrimination included in § 7702(a)(1)(B) are "section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)), section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631) or any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph."

If an employee seeks judicial review of a final order from the MSPB, there are again two avenues on which the employee's case may travel. If the MSPB decision does not involve a mixed case – i.e., there are no allegations of discrimination – the employee must appeal this decision to the Federal Circuit Court of Appeals. 5 U.S.C. § 7703(b)(1). If the MSPB decision does involve a mixed case, the employee must seek judicial review of all claims, both discriminatory and non-discriminatory in nature, in district court. 5 U.S.C. § 7703(b)(2).

When an employee files a mixed case in the district court seeking review of the MSPB decision on both the discriminatory and non-discriminatory claims, the employee must file the claims based on discrimination under the applicable statute prohibiting the discrimination, as § 7703(b)(2) explains.

> Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C.2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)) as applicable.

5 U.S.C. § 7703(b)(2). See also, McAdams, 64 F.3d at 1143 n.5.

Since a final decision from the MSPB exhausts an employee's administrative remedies as to Plaintiff's claims of discrimination, "the employee . . . shall have the right to have the facts subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c); see Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994).

Quite differently, however, the district court reviews Plaintiff's non-

discrimination claims solely on the MSPB record and sets the MSPB decision aside only if the decision is found to be:

> (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c); Crawford, 37 F.3d at 1340.

Applying these principles to the case at bar, Plaintiff is entitled to pursue the claims of discrimination that she raised before the MSPB de novo before this Court by setting each claim of discrimination out under the statute which prohibits the act of discrimination. Plaintiff is also entitled to this Court's judicial review of the MSPB decision on non-discriminatory issues under the "arbitrary and capricious" standard on the MSPB record.

### 3. Dismissal for Failure to State a Claim

USDA also raises arguments directed at Plaintiff's individual counts, asserting that they are subject to dismissal because they are preempted by Title VII and that certain counts otherwise fail to state a cause of action.

It is well-settled that Title VII is the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976). As such, the Eighth Circuit has held that "[w]hen the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." Mathis v. Henderson,

243 F.3d 446, 451 (8th Cir. 2001). Therefore, the Court must address each of Plaintiff's non-Title VII claims to determine if they arise from the same set of facts as her Title VII claims asserted in Counts I and II.

In Count I, Plaintiff sets out claims for discrimination based on her race and gender under Title VII and the Missouri Human Rights Act ("MHRA"). Since both claims arise out of the same set of facts, Plaintiff's state law claim under the MHRA for employment discrimination is preempted. See Mathis, 243 F.3d at 450 (state law claims against supervisor for same acts alleged to be sexual harassment under federal law, preempted by Title VII).

The same is true with respect to Count III, in which Plaintiff alleges that USDA discriminated against her because of her race in violation of 42 U.S.C. § 1981. Indeed, the Supreme Court specifically address claims under § 1981 in Brown, and held that, unlike a private employee, a federal employee may not maintain a claim under § 1981 against the United States based on a claim of intentional discrimination in employment. Brown, 425 U.S. at 835. As such, Plaintiff fails to state a claim under § 1981 in Count III.

In Count IV, Plaintiff attempts to state a claim under 42 U.S.C. § 1982 and § 1983. The Court first finds that these claims are preempted because they are based on the same disparate and discriminatory acts on which Plaintiff bases her Title VII claims in Counts I and II. Plaintiff's claims under these two statutes fail for other reasons as well. The case law recognizes § 1982 "clearly does not provide relief for claims alleging racial

21

discrimination in employment, but rather is limited to claims of discrimination involving conveyances of real and personal property." Al-Marayati v. Univ. of Toledo, 145 F.3d 1329 (table), 1998 WL 252760, at *2 (6th Cir. May 13, 1998). See also Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004). Likewise, § 1983 "is inapplicable when a person acts under color of federal law." Jones v. U.S., 16 F.3d 979, 981 (8th Cir. 1994).

In Count V, Plaintiff states a claim for discrimination due to her disability under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). Because relief under the ADA is not available to federal employees, however, Plaintiff fails to state a claim as a matter of law. See 42 U.S.C. § 12111(5)(B)(i). A federal employee must pursue an employment disability claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. Lewis v. Johanns, 180 Fed. Appx. 599, 601 (8th Cir. 2006). As such, Count V is dismissed without prejudice.

In Count VI, Plaintiff attempts to state a claim under the National Labor Relations Act, 29 U.S.C. § 151, et seq. ("NLRA"), alleging Defendants restrained, coerced, and interfered with the exercise of Plaintiff's rights under the NLRA. Although this claim is arguably preempted by Plaintiff's Title VII retaliation claim found in Count II, this claim fails for the same reason stated in this Court's prior Order of December 13, 2005, namely, because the NLRA does not apply to non-postal federal employees. See 29 U.S.C. § 152(2) and (3).

In Count VII, Plaintiff asserts a claim for retaliation in violation of the Civil Service Reform Act of 1978, as amended by the Whistleblower Protection Act of 1989, 5

U.S.C. § 1201, et seq. ("WBPA").  USDA argues that Plaintiff's WBPA retaliation claim

in Count VII is merely a recharacterization of her Title VII retaliation claim in Count II.

The Court disagrees.  In Count II, Plaintiff alleges that USDA discriminated and

retaliated against her in violation of Title VII because Plaintiff engaged in union activity

and because she filed grievances against USDA.  In Count VII, Plaintiff alleges that she

was disciplined, transferred, reassigned, and/or fired because she engaged in statutorily

defined "whistleblowing" activity.  Thus, to the extent Plaintiff properly exhausted this

claim by raising it in the MSPB action, her claim of retaliation under the WBPA

contained in Count VII is not preempted by her claim for Title VII retaliation set out in

Count II.

In Count VIII, Plaintiff alleges the USDA violated her First Amendment rights

by abridging her freedom of speech regarding employment matters.  She also alleges the

USDA violated her Fifth and Fourteenth Amendment rights by wrongfully depriving her

of her property interest in her job with the USDA without due process of law.  Lastly, she

argues she was denied equal protection under the Fourteenth Amendment.

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the

United States Supreme Court fashioned a non-statutory remedy for violations of the

Constitution by federal officials similar to the violations Plaintiff asserts here.  Since the

Bivens decision, however, the Court has declined to extend such claims to any context in

which it may be inferred that Congress has spoken.  Bush v. Lucas, 462 U.S. 367, 374

(1983).  Given the comprehensive scheme available under the civil service system, the

United States Supreme Court has specifically declined to extend a judicially-created remedy for federal employees who assert they were retaliated against by supervisors for the exercise of their First Amendment rights. Id. at 385-86. The Court also declined to extend First Amendment Bivens claims to claims against federal agencies. Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001). This principle also has been applied to bar Fifth Amendment due process challenges against federal employers. McIntosh v. Turner, 861 F.2d 524, 525-27 (8th Cir. 1988); Wells v. F.A.A., 755 F.2d 804, 809-10 (11th Cir. 1985). As such, Plaintiff's First and Fifth Amendment claims are precluded.

Plaintiff's Bivens claims arising under the due process and equal protection Fourteenth Amendment fail, as well, since the Fourteenth Amendment applies only to states and state actors, not the federal government. Pinson v. Rumsfeld, 192 Fed. Appx. 811, 821 (11th Cir.), cert. denied, 127 S. Ct. 698 (2006); see also U.S. Const. amend. XIV, § 1 (providing that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws."). As such, all of Plaintiff's claims in Count VIII must be dismissed.

In Count IX, Plaintiff alleges Defendants tortiously interfered with Plaintiff's employment at the USDA and with her ability to find employment since she was fired in 1999. Since the alleged tortious interference with her employment at the USDA arises under the same facts alleged in her Title VII claims set out in Counts I and II, this portion of Count IX is preempted.

Even if some portion of Count IX survived, however, it would be barred by the sovereign immunity doctrine. The United States' sovereign immunity is waived with regard to tort claims against it only after certain jurisdictional prerequisites are met. See Federal Tort Claims Act, 28 U.S.C. § 2674-§ 2675 ("FTCA"). Before a party may file a tort claim against the government, that person must have "presented the claim to the appropriate Federal agency and the claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). Filing such an administrative claim is a jurisdictional prerequisite to filing a tort claim against the government in this Court. Daniels v. U.S., 135 Fed. Appx. 900, 901 (8th Cir. 2005). Here, Plaintiff failed to raise any tort claims before Judge Miksa and has failed to present this Court with any final agency decision regarding this issue. As such, Count IX is dismissed in its entirety. See McAdams, 64 F.3d at 1141.

In Count X, Plaintiff asserts her right to a trial de novo regarding the claims and issues addressed in Judge Miksa's August 2, 2002 MSPB Decision.[9] As discussed above, however, in order to obtain judicial review of claims of discrimination de novo, Plaintiff was required to plead those claims under the statutes prohibiting such discrimination. Plaintiff has done that and those claims are limited, as the Court previously stated, to the claims of discrimination addressed by the MSPB. With regard to all other claims,

---

[9] In her second amended complaint, Plaintiff actually seeks a trial de novo regarding all claims and issues ever raised in any proceeding before MSPB and OPM. However, at oral argument, Plaintiff conceded Count X relates only to Judge Miksa's August 2, 2002 MSPB Decision.

Plaintiff is entitled to this Court's review of the MSPB decision on the MSPB record and an application of an "arbitrary and capricious" standard. The Court construes Count X in this way.

### 4. Res judicata

The next argument USDA makes in support of its motion to dismiss is that <u>res judicata</u> bars Plaintiff's attempt to relitigate the same nucleus of operative facts that were previously disposed of by the MSPB and the Federal Circuit, which previously held that Plaintiff's claims against the USDA for discrimination, retaliation, and violation of due process were baseless. <u>Walton</u>, 230 F.3d 1383, 2000 WL 194113 ("Walton I") at *4. The Court disagrees.

<u>Res judicata</u>, or claim preclusion, precludes a party from relitigating the same cause of action. <u>Wedow v. City of Kansas City, Mo.</u>, 442 F.3d 661, 669 (8th Cir. 2006). <u>Res judicata</u> applies when: (1) there is a prior judgment rendered by a court of competent jurisdiction; (2) that prior judgment was final and on the merits; and (3) it involved the same cause of action and the same parties or privies. <u>Id.</u> <u>Res judicata</u> bars claims that were, or could have been litigated, in the earlier proceeding, but it does not apply to claims that did not exist when the first suit was filed. <u>Id.</u>

In <u>Walton I</u>, the Federal Circuit reviewed a final MSPB decision which denied three MSPB petitions for review of three initial decisions of the Office of Special Counsel. The initial decisions arose from complaints Plaintiff filed from 1995 to 1997 with the Office of Special Counsel regarding her employer. <u>Walton</u>, 230 F.3d 1383

(table), 2000 WL 194113 at *1.  In general, Plaintiff alleged that USDA placed her on a

Performance Improvement Plan ("PIP") in 1996 in retaliation for whistleblowing

activities as defined by 5 U.S.C. § 2302(b)(8) that she engaged in while employed at the

USDA.  Id.  The activities Plaintiff alleged were "whistleblowing" activities consisted of

a series of disclosures Plaintiff made to various individuals regarding alleged

improprieties at USDA's St. Louis office.  Id.  As summarized by the Federal Circuit

Court, the disclosures involved in these three MSPB complaints consisted of:

> (1) allegations contained in an April 1995 letter from Ms. Walton to
> Congressman William Clay; (2) a July 1995 report regarding alleged
> reprisals against Ms. Walton for making complaints to the [USDA]'s
> equal employment opportunity office; (3) statements made to Clarence
> Squellati in November 1995 regarding the Agency's allegedly unfair
> treatment of Ms. Walton's leave requests; (4) certain disclosures in 1996 regarding the
> [USDA]'s new performance standards; (5) an April 2, 1996 disclosure regarding an
> altercation with a coworker; and (6)  miscellaneous verbal disclosures to coworkers and
> supervisors.

Id.

As discussed above, and as Plaintiff conceded at oral argument, Plaintiff's

whistleblowing claims in this Court are limited to those raised before the MSPB and

addressed by Judge Miksa's August 2, 2002 Decision.  A review of Judge Miksa's

decision reveals that only one whistleblowing claim was asserted, which Judge Miksa

described as:

> a complaint [filed in May 1998] with the agency's Office of Inspector
> General that [Plaintiff's] immediate supervisor, Mr. Huntley, and
> several other employees were allegedly misusing their government
> computers [and] that she informed Mr. Buddemeyer of these allegations.

<u>See</u> Judge Miksa's August 2, 2002 MSPB Initial Decision, p. 21.  Since this

whistleblowing claim was not addressed by the Federal Circuit, <u>res judicata</u> does not bar

this claim here.  Nor is the Court persuaded that <u>res judicata</u> bars other claims asserted by

Plaintiff,[10] as the Federal Circuit addressed only Plaintiff's whistleblowing claims set out

above – and not any other claims for discrimination.

In light of the above analysis of USDA's motion to dismiss, the following claims

asserted by Plaintiff remain:

> **Count I:** Employment discrimination in violation of Title VII based on
> Plaintiff's race and gender.  Although this count is limited to those race
> and gender claims made before Judge Miksa, the Court reviews these
> claims <u>de novo</u>.
>
> **Count II:** Employment discrimination in violation of Title VII in
> retaliation for Plaintiff's labor union activity and filing of grievances
> against the USDA.  Although this is limited to the 16 specific grievances
> Plaintiff presented to the MSPB, the Court also reviews this claim <u>de
> novo</u>.
>
> **Count VII:** Retaliation in violation of the Whistleblower Protection
> Act.  This is limited to the single whistleblowing act discussed <u>infra</u> and
> is reviewed <u>de novo</u>.
>
> **Count X:** Review of Judge Miksa's August 2, 2002 Decision as to all
> remaining non-discrimination issues, which the Court reviews under an
> "arbitrary and capricious" standard.

**B.  <u>MSPB and OPM's Motion to Dismiss – Proper Parties</u>**

---

[10]  Judge Miksa also describes 16 acts of "complaint-filing and grievance
activities" which are prohibited by 5 U.S.C. § 2302(b)(9).  This Court agrees with Judge
Miksa's categorization of these 16 acts – that they are "complaint-filing and grievance
activities" prohibited by 5 U.S.C. § 2302(b)(9), not "whistleblowing" activities as
prohibited by 5 U.S.C. § 2302(b)(8).

MSPB also filed a motion to dismiss (Doc. #122), which OPM joined. MSPB and OPM assert that in light of the nature of Plaintiff's claims, they are not proper parties to Plaintiff's action, and that the only proper parties are USDA and/or Johanns. 5 U.S.C. § 7703 governs "judicial review of decisions of the Merit Systems Protection Board." Under 5 U.S.C. § 7703(a)(2),

> The Board shall be the named respondent in any proceeding brought pursuant to this subsection, <u>unless the employee</u> . . . <u>seeks review of a final order or decision on the merits on the underlying personnel action</u>..., <u>in which case the agency responsible for taking the personnel action shall be the respondent.</u>

(Emphasis added).

In light of Plaintiff's claims for review of the MSPB Decision, there is no question that USDA is properly named as respondent under 5 U.S.C. § 7703(a)(2), since it is the agency responsible for taking the personnel action. <u>See</u> <u>Amin v. Merit Systems Protection Bd.</u>, 951 F.2d 1247, 1252 (Fed. Cir. 1991). Additionally, since the Whistleblower Protection Act of 1989, 5 U.S.C. § 1213, <u>et seq</u>., merely expands Plaintiff's rights as a federal employee under 5 U.S.C. § 1204, the Court also finds that USDA is the proper party defendant sued under Plaintiff's whistleblowing claim.

USDA and/or Johanns are also proper parties with regard to Plaintiff's remaining discrimination claims. When a lawsuit is based on a claim of discrimination that is "subject to the provisions of section 7702," it "shall be filed under" the statutes which prohibit the discrimination. 5 U.S.C. § 7703(b)(2). In this case, Plaintiff's remaining claims of discrimination are filed under Title VII, 42 U.S.C. § 2000e, <u>et seq</u>. Under 42

U.S.C. § 2000e-16(c), a Title VII plaintiff is required to name the head of the appropriate agency as the defendant. Therefore, Mike Johanns, as Secretary of the USDA, is a properly named defendant with regard to the Title VII claims.

As Defendants MSPB and OPM correctly assert, however, they are not proper parties under 5 U.S.C. § 7703(a)(2), since neither agency was responsible for taking the personnel action. Tiffany v. Dept. of Navy, 795 F.2d 67, 69 (Fed. Cir. 1986). Plaintiff has not asserted otherwise. Moreover, as Defendants also correctly note, Plaintiff has not asserted any actionable conduct by either agency. At oral argument, Plaintiff's counsel stated that he had named MSPB and OPM as a precautionary measure and only to the extent he was required to do so in order to obtain review of Judge Miksa's decision. As neither OPM nor MSPB are necessary for such review and USDA is the only properly named respondent under 5 U.S.C. § 7703(a)(2), claims against these parties are properly dismissed, leaving Mike Johanns and the USDA as the only properly named Defendants with respect to the remaining claims.

**C. Defendants' Motion for Summary Judgment (Doc. #144)**

Pending a ruling on their motions to dismiss, Defendants[11] also filed a motion for summary judgment, arguing that Plaintiff has not established a prima facie case of discrimination under Title VII. The motion is silent with regard to Plaintiff's claims for

_____

[11] The Court notes Mike Johanns was not expressly included as a party to the motion. However, since Johanns was sued in solely in his official capacity, as Secretary of USDA, the Court will review USDA's motion for summary judgment as to Johanns as well.

whistleblowing retaliation and review of Judge Miksa's MSPB Decision.[12]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When ruling on a motion for summary judgment, this Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Tademe v. Saint Cloud State Univ., 328 F.3d 982, 986 (8th Cir. 2003); Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). The Court "must not weigh evidence or make credibility determinations." Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

---

[12] Defendant actually does address Plaintiff's claim for review of Judge Miksa's Decision, but argues only that this claim is time-barred. There is no motion for summary judgment on the merits of the claim. Defendant makes no mention of the whistleblowing claim at all.

trial.'" Matsushita Elec. Indus. Co., Ltd. v  Zenith Radio Corp., 475 U.S. 574, 587

(1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  Because discrimination cases often turn on inferences rather than direct

evidence, summary judgment should be "cautiously granted" in such cases.  Jacob-Mua v.

Veneman, 289 F.3d 517, 520 (8th Cir. 2002); see also Mayer, 318 F.3d at 806.

### 1.  Plaintiff's Title VII Claims

Title VII makes it an unlawful employment practice for an employer to

"discharge any individual . . . because of such individual's race, color, religion, sex, or

nation origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff claims the USDA violated Title VII

by discriminating against her on the basis of race and/or gender and retaliating against her

for engaging in protected activities.

### a.  Count I - Race & Gender Claims

A plaintiff may establish a violation of Title VII's prohibition against race and

gender discrimination either through direct or indirect evidence.  Twymon v. Wells Fargo

& Co., 462 F.3d 925, 933 (8th Cir. 2006)(citing Price Waterhouse v. Hopkins, 490 U.S.

228, 270-79 (1989)).

Plaintiff first contends that she has presented direct evidence of the USDA's

unlawful discrimination based on her race and gender, however, the Court disagrees.

Direct evidence is evidence that establishes a specific link between the alleged discriminatory animus and the challenged employment decision which is sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision. <u>Twymon</u>, 462 F.3d at 933. "'Direct evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" <u>Id</u>. (citing <u>Browning v. President Riverboat Casino-Missouri, Inc.</u>, 139 F.3d 631, 635 (8th Cir. 1998)(quoting <u>Price Waterhouse</u>, 490 U.S. at 277)).

Here, Plaintiff offers no direct evidence of discrimination based on race or gender. In support of her claim that she has presented such direct evidence, Plaintiff directs the Court's attention to: (1) a November 13, 1997 Decision by Jan Woods, a Hearing Representative for the U.S. Department of Labor, Office of Workers' Compensation Programs, which lists 13 acts taken by Defendant against Plaintiff; (2) Judge Miksa's August 2, 2002 Decision which lists 16 activities for which Defendant could have retaliated against Plaintiff; and (3) Plaintiff's response to Defendant's motion for summary judgment, in which she lists 17 discriminatory acts she asserts she has established in the record. However, even if the Court assumes each item on each list is true, the Court fails to find that any of these actions provides <u>direct</u> evidence of discrimination.

"[D]irect evidence of discrimination is rare." <u>E.E.O.C. v. Liberal R-II School Dist.</u>, 314 F.3d 920, 923 (8th Cir. 2002). "'There will seldom be eyewitness testimony as

to the employer's mental processes' because a shrewd employer will not leave a trail of direct inculpatory evidence for the plaintiff to bring into court."  Id., (citing Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).  "A 'smoking-gun' case in the discrimination arena is rare."  Rothmeier, 85 F.3d at 1332.

In this case, none of the specific acts that Plaintiff urges the Court to look at, shows a direct connection between the action and any discriminatory motive.  The acts Plaintiff describes show that, if true, USDA treated Plaintiff unfairly by doing things such as unfairly distributing work assignments, denying proper training, denying proper credit for good job performance, falsely accusing her of poor job performance, denying approval for administrative and regular leave, denying promotions, denying requests for reassignment, and issuing lower performance evaluations than Plaintiff deserved. Although Plaintiff may believe that these acts were motivated by racial or gender discrimination, none of the acts Plaintiff has presented shows, on its face, that USDA committed these acts based on Plaintiff's race or gender.

In other words, Plaintiff has failed to present any evidence that is not circumstantial to prove that the USDA made any adverse employment action with regard to Plaintiff because of her race or gender.  As such, her claims must be analyzed using the indirect evidence she presents.  To assess an employment discrimination claim based on indirect evidence, the Court applies the burden-shifting framework set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under this framework, Plaintiff must first establish a <u>prima</u> <u>facie</u> case of discrimination. <u>Id</u>. at 802. Once Plaintiff has established her <u>prima</u> <u>facie</u> case, the burden then shifts to Defendant to present a legitimate reason for the allegedly discriminatory action. <u>Id</u>. If Defendant doe. As such, her claims must be analyzed using the indirect evidence she presents. To assess an employment discrimination claim based on indirect evidence, the Court applies the burden-shifting framework set out by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this framework, Plaintiff must first establish a <u>prima</u> <u>facie</u> case of discrimination. <u>Id</u>. at 802. Once Plaintiff has established her <u>prima</u> <u>facie</u> case, the burden then shifts to Defendant to present a legitimate reason for the allegedly discriminatory action. <u>Id</u>. If Defendant does so, the burden shifts back to Plaintiff to establish that the asserted legitimate reasons were merely a pretext for a discriminatory action. <u>Id</u>. at 804.

To establish a <u>prima</u> <u>facie</u> case of discrimination based on race or gender, Plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for her position; and (3) that she suffered an adverse employment action under circumstances permitting an inference that the action was the result of unlawful discrimination. <u>Johnson v. Ready Mix Concrete Co.</u>, 424 F.3d 806, 810 (8th Cir. 2005). With regard to the third factor, such circumstances may be shown by evidence that Plaintiff was treated differently than similarly situated employees. <u>Clark v. Runyon</u>, 218 F.3d 915, 918 (8th Cir. 2000).

Defendants concede that Plaintiff is a member of a protected class and that she

was terminated from employment in 1999. Defendants deny, however, that Plaintiff either met the legitimate employment expectations of holding Plaintiff's position at the USDA or that Plaintiff has shown that she was treated differently than similarly situated employees outside of her protected class. The Court agrees.

A review of the undisputed facts in this case reveals that Plaintiff was absent from work from July 7, 1996 through May 14, 1997 and from September 1, 1998 through December 4, 1998. She was also absent for 35% of her scheduled work time in December 1998. She then appeared for work for three days in January 1999 but was absent thereafter until her employment was terminated in July 1999.

It is also undisputed that the USDA requested the Plaintiff to provide medical documentation regarding when, if ever, she would be able to return to work, and that Plaintiff's treating physicians informed the USDA that they were unable to estimate if Plaintiff would ever be able to return to work. The medical documentation also indicated that Plaintiff expressed homicidal tendencies toward her supervisor. Plaintiff has presented no evidence to the contrary. Based upon this uncontested evidence, the Court finds that Plaintiff has failed to establish that she was able to perform her job at the USDA.

The Court reaches the same conclusion with regard to Plaintiff's suggestion that she was treated differently from similarly situated employees outside her protected class. In order to satisfy this element of her prima facie case, Plaintiff would have to prove by "specific, tangible evidence that (a) non-African American and/or male employees were

treated more favorably than her, and (b) those same employees were similarly situated to her in all relevant respects." <u>Clark</u>, 218 F.3d at 918. Employees are similarly situated when they are involved in or are accused of the same offense and are disciplined in different ways. <u>Harvey v. Anheuser-Busch, Inc.</u>, 38 F.3d 968, 972 (8th Cir. 1994).

Here, Plaintiff simply presents no evidence that she was treated differently than similarly situated employees. The Court acknowledges that Plaintiff has submitted her own affidavit regarding Defendant's alleged conduct, but notes that it is full of conclusory statements regarding the alleged discrimination and lacks factual support. As such, the affidavit does not comply with Fed. R. Civ. P. 56(e), which requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Based on the evidence presented at the MSPB hearing, Judge Miksa found that "[a]part from her own generalized conclusions and characterizations of her treatment at work by [her supervisor] Mr. Buddemeyer and other individuals, [Plaintiff] presented no probative corroborating evidence that she was treated more harshly than employees who are not in these protected groups." Judge Miksa's Decision, p. 23. Focusing on Plaintiff's record of absences, Judge Miksa also observed:

> Ms. Walton, in all due respect, your case involves a work history of being absent for considerable periods of time from '96 through '97, and then again from September of '98 through July of '99. And, you know, I don't know that you have any comparison employees that have been off even during one of those periods of absences, let alone having two of them within a three-year period.

37

Transcript of June 5, 2000 MSPB Administrative Hearing, p. 350-51.

Although the Court must review Plaintiff's Title VII claims <u>de novo</u>, based not on the record presented to Judge Miksa, but rather the record presented to this Court, Judge Miksa's findings with regard to these issues also aptly describes the record before this Court. In response to Defendants' motion for summary judgment, Plaintiff has failed to show either that she remained qualified for her position or that similarly situated employees were treated differently. As such, Plaintiff has simply failed to establish a <u>prima facie</u> case of discrimination based on race or gender.

Even if the Court were to assume Plainiff had established a <u>prima facie</u> case, USDA has asserted that it terminated Plaintiff for legitimate, non-discriminatory reason, based on these same undisputed facts. Plaintiff has not shown that the reasons offered by Defendant were pretext. As such, Defendant is entitled to judgment as a matter of law on Plaintiff's claims based on allegations of race and gender discrimination in Count I.

### b. <u>Count II - Retaliation Claims</u>

Although the Court reviews Plaintiff's Title VII claims <u>de novo</u>, her retaliation claims are limited to the claims presented to the MSPB -- the agency in which she exhausted her administrative remedies with regard to the remaining Title VII claims. At the hearing before Judge Miksa, Plaintiff alleged that she was retaliated against, or fired, for the following 16 acts:

> (1)    successfully "defending" another grievant, Mr. Brasch, in 1991 or 1992;

(2)    filing union grievances in 1991 and 1992 concerning performance ratings and non-selection for promotion;

(3)    obtaining a favorable settlement in a grievance action in 1993;

(4)    participating in an African-American coalition known as the Unity Forum, which publicized racial injustices in the agency's St. Louis Finance Office;

(5)    signing a 1993 United Forum EEO petition;

(6)    filing a 1994 complaint against a manager for discussing with Betty Gahn, a fellow GS-11 Management Analyst, placing [Walton] on a PIP to relieve the manager of [Walton]'s discrimination complaints;

(7)    complaining to her EEO counselor, Ms. Hillberg, that [Walton's] April 1995 training plan was inadequate;

(8)    complaining to her EEO counselors that Ms. Gahn failed to train her as allegedly instructed by management;

(9)    filing a 1995 EEO complaint against Mr. Buddemeyer and her immediate supervisor, Mark Huntley, for "investigation (of her) regarding (her) EEO activities;"

(10)   complaining to higher level supervision, and the agency's Director of Civil Rights, that Mr. Buddemeyer was discriminating against her by placing leave memorandums [sic] in her personnel folder,

(11)   filing a "leave restriction grievance," in 1996 with the assistance of an attorney, Mr. Hochstein, and filing EEO complaints regarding her leave restriction and placement on a PIP;

(12)   filing a Workers' Compensation claim for her knee injury in October 1997;

(13)   rejecting the agency's offer to settle her EEO claims in 1998;

(14)   filing a 1998 Office of Inspector General complaint 'letting them know the issues (she) was confronting . . .,' and for complaining to Mr. Buddemeyer that Mr. Huntley and other co-workers were using their government computers for "jokes, party planning, drawing tweety birds,

(and) sexist jokes;"

    (15)   pursuing her unsuccessful individual right of action appeal from her 1996 PIP before the Board in 1998; and

    (16)   for assisting Ms. Gahn in documenting Ms. Gahn's twenty-seven EEO complaints against the agency.

See Judge Miksa's August 2, 2002 MSPB Initial Decision, p. 19-20, citing Plaintiff's pre-hearing statement of facts and issues.

The Court notes that not all of these 16 acts could support a claim of retaliation under Title VII. Plaintiff can only state a claim for Title VII retaliation if the complaints she alleges she was retaliated against for making, were complaints that a reasonable person could have believed violated Title VII. Curd v. Hank's Discount Fine Furniture, Inc., 272 F.3d 1039, 1041 (8th Cir. 2001). In other words, the basis of Plaintiff's prior grievance or complaint about her employer must be seen to have arisen under Title VII. Id. Here, many of the acts alleged by Plaintiff as the basis of retaliation (e.g., complaining that Ms. Gahn failed to train her as allegedly instructed by management and filing a workers' compensation claim) do not appear to constitute "protected activity."

Even if one were to consider all of the acts asserted by Plaintiff, her Title VII retaliation claim fails in any event. As with her Title VII claims for race and gender discrimination, Plaintiff again presents no direct evidence that she was fired or retaliated against because she engaged in union activity or filed grievances against Defendant. Therefore, under McDonnell Douglas, she must raise an inference of discrimination by establishing a prima facie case. To establish a Title VII claim for retaliation, Plaintiff

must show (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that a causal relationship exists between the two. <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1060 (8th Cir. 1997).

Put simply, Plaintiff has presented no evidence to this Court to support her claim that she was fired in retaliation for any of the 16 acts listed above. Since Defendant has properly denied in its motion for summary judgment that Plaintiff was fired in retaliation for any of the 16 acts above, Plaintiff had the burden to present evidence that connects these events in some way to the adverse action taken by Defendant. Instead, Plaintiff rests on conclusory allegations of retaliation in her affidavit. Conclusory allegations of retaliation contained in an affidavit are not sufficient to establish a <u>prima facie</u> case of retaliation under Title VII. <u>Grabovac v. Allstate Ins. Co.</u>, 426 F.3d 951, 955 (8th Cir. 2005). "Rather, [Plaintiff must] point to evidence in the record to raise a genuine issue for trial." <u>Id</u>. This Plaintiff has failed to do. Based on the Court's review of the record, it is difficult to infer any connection between any of these 16 events and any adverse employment action taken by Defendant, especially where, as here, many of the events occurred years before any adverse action.

Further, the Court also finds, as it did under Count I, that Plaintiff has failed to establish that USDA's reasons for reprimanding Plaintiff and then terminating her employment were pretextual. For all of these reasons, Defendants are entitled to judgment on Count II.

Given the Court's disposition on Counts I and II, Mike Johanns is now disposed

of as a party. As set forth above, Johanns is a proper party only with respect to Plaintiff's Title VII claims, and USDA is a proper party with respect to claims under the WBPA and claims for judicial review of the MSPB decision on the non-discrimination claims (Count X). Since Defendants are entitled to judgment as a matter of law on the Title VII claims, the Court finds, sua sponte, that Defendant, Mike Johanns, is entitled to judgment as a matter of law on the remaining claims.

## 2. Count VII - Plaintiff's Whistleblowing Claim

In their motion for summary judgment, Defendants have not addressed on the merits the whistleblowing claim Plaintiff presents in Count VII. Rather, Defendants argue that Plaintiff's whistleblowing claim is merely a recharacterization of her Title VII retaliation claim contained in Count II. As previously determined infra, Plaintiff's Count VII whistleblowing claim is different from Plaintiff's Title VII retaliation claim set out in Count II, which alleges retaliation for union activity and the filing of grievances, not statutorily defined "whistleblowing" activity. Thus, the Court denies Defendants' motion for summary judgment with regard to Count VII, which claim survives with respect to the single whistleblowing activity asserted before Judge Miksa.

## 3. Count X - Plaintiff's claim for review of non-discrimination claims brought before the MSPB

As discussed above, and having granted judgement to Defendants on the claims of race and gender discrimination, the Court construes Plaintiff's Count X as a claim for judicial review of the claims Plaintiff brought before the MSPB which were not based on

discrimination. Here, too, Defendants did not address the merits of Count X in their motion for summary judgment, resting, instead, on USDA's assertion in its motion to dismiss that the claim is procedurally time-barred. As the Court has rejected Defendants' procedural argument, Defendants' motion for summary judgment with regard to Count X is denied.

## CONCLUSION

To summarize the Court's Order:

(i) any claims arising out of the original complaints filed in this action and under Case No. 4:02CV808 are dismissed as time-barred or for failure to exhaust, leaving only the issues Plaintiff presented to the MSPB following Plaintiff's termination as timely filed;

(ii) Counts IV and IX, as well as Plaintiff's MHRA claim set out in a portion of Count I, are preempted by Title VII;

(iii) Counts III, IV, V, VI, and VIII fail to state a claim as a matter of law;

(iv) Defendants, MSPB and OPM, are dismissed with prejudice as they are not proper parties;

(v) The remaining Defendants, USDA and Johanns, are entitled to summary judgment on Plaintiff's Title VII claims found in Counts I and II, leaving only Plaintiff's claim for retaliation in violation of the WBPA in Count VII and her claim for judicial review of the non-discrimination claims.

(vi) As Defendants are entitled to dismissal of or judgment on all claims as to

which Mike Johanns, rather than USDA, would be the proper party, this Order disposes of all claims against Defendant Mike Johanns, leaving only USDA as a proper party.

Accordingly,

**IT IS HEREBY ORDERED** that the USDA's Motion to Dismiss or for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** (Doc. #117);

**IT IS FURTHER ORDERED** that MSPB's Motion to Dismiss, in which OPM joins, is **GRANTED**  (Doc. #122), and MSPB and OPM are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendants USDA, MSPB and OPM is **GRANTED IN PART and DENIED IN PART** (Doc. 144) (the effect of which disposes of Defendant Mike Johanns from the case).

**IT IS FURTHER ORDERED** that in addition to the matters required to be addressed by the Case Management Order, the parties, in their pretrial materials, shall also: (i) detail what specific claims the parties believe remain for determination, in light of the foregoing Order; (ii) address whether each such claim should properly be determined by the Court or by a jury; and (iii) specify the standard of review that applies to any claim for review by the Court.

**IT IS FURTHER ORDERED** that the Court shall hold a pretrial conference

with counsel on **Thursday, May 10, 2007, at 10:00 a.m.**, at which time proceedings with regard to the remaining claims and any motions in limine will be addressed.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE


Dated this 30th day of April, 2007.